1   Linda Miller Savitt (Cal. Bar. No. 94164)
    Eric C. Schwettmann (Cal. Bar No. 188784)
2   BALLARD ROSENBERG GOLPER & SAVITT, LLP
    500 North Brand Boulevard, Twentieth Floor
3   Glendale, California 91203
    Telephone:  (818) 508-3700
4   Facsimile:  (818) 506-4827
    Email: eschwettmann@brgslaw.com
5          lsavitt@brgslaw.com

6   Of Counsel:
    Timothy M. McKissock
7   Attorneys for Goldline, LLC

8   NELSON MULLINS RILEY & SCARBOROUGH LLP
    1320 Main Street / 17th Floor
9   Post Office Box 11070 (29211-1070)
    Columbia, SC  29201
10  Telephone:  (803) 255-5528
    Facsimile:  (803) 256-7500
11  Email: tim.mckissock@nelsonmullins.com
    Admitted Pro Hac Vice
12

13  Attorneys for Plaintiff
    GOLDLINE, LLC
14

15              **UNITED STATES DISTRICT COURT FOR THE**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17

18  GOLDLINE, LLC                          Case No.:  2:14-CV-03680-DDP-ASx

19                    · Plaintiff,         **SECOND AMENDED**
                                           **COMPLAINT FOR:**
20           v.
                                           **(1)  TRADEMARK INFRINGEMENT,**
21  REGAL ASSETS LLC, TYLER                **15 U.S.C. §§ 1114, 1125;**
    GALLAGHER, KELLY FELIX,
22  VINCENT CURTO, DONNY                   **(2)  FALSE ADVERTISING AND**
    GAMBLE, GRAEME NICHOL, JOHN            **UNFAIR COMPETITION, 15 U.S.C. §**
23  CRESTANI, and Does 1 through 100,      **1125(A);**
    inclusive
                                           **(3)  FALSE DESIGNATION OF**
24                    Defendants.          **ORIGIN, 15 U.S.C. § 1125(A);**

25                                         **(4)  FALSE ADVERTISING,**
                                           **CALIFORNIA BUSINESS &**
26

27

28

1   PROFESSIONS CODE §§ 17500;

   (5)  UNFAIR COMPETITION,
2   CALIFORNIA BUSINESS &
   PROFESSIONS CODE §§ 17200;

3   (6)  TRADEMARK INFRINGEMENT,
   COMMON LAW;

4   (7) DILUTION, CALIFORNIA
   BUSINESS & PROFESSIONS CODE
5   §14247;

6   (8)  UNFAIR COMPETITION,
   COMMON LAW;

7   (9) RICO, 18 U.S.C. § 1962(C);

   (10) RICO, 18 U.S.C. § 1962(A);
8
   (11)  TRADE LIBEL/COMMERCIAL
9   DISPARAGEMENT, COMMON LAW;

   (12) CIVIL CONSPIRACY.
10

11   DEMAND FOR JURY TRIAL

12

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

SECOND AMENDED COMPLAINT

Plaintiff Goldline, LLC ("Goldline" or "Plaintiff"), through its attorneys, submits this Complaint against Defendants Regal Assets LLC ("Regal"), Tyler Gallagher ("Gallagher"), Kelly Felix ("Felix"), Donny Gamble ("Gamble"), Vincent Curto ("Curto"), Graeme Nichol ("Nichol"), John Crestani ("Crestani", and, collectively with Gallagher, Felix, Gamble, Curto, and Nichol, the "Individual Defendants"), and Does 1 through 100 ("Doe Defendants", and, collectively with Regal and the Individual Defendants, the "Defendants"), and alleges as follows:

## NATURE OF ACTION

1.      This is an action for federal trademark infringement, unfair competition, false advertising, and false designation of origin under the Lanham Act (15 U.S.C. §§ 1114, 1118, 1125(a) *et seq.*), violation of the Racketeer Influenced & Corrupt Organization Act (18 U.S.C. § 1964, *et seq.*), false advertising, trademark infringement and dilution, unfair competition, trade libel/commercial disparagement, and civil conspiracy under state and common law.

2.      Plaintiff and Regal are direct competitors in the precious metals industry.

3.      Upon information and belief, Regal and the Individual Defendants (collectively, "Defendants") created, maintain, and operate Regal's Affiliate Program, an unlawful enterprise designed to disparage Plaintiff, mislead consumers, and divert business from Plaintiff to Regal through control over or the promotion, creation, maintenance, and support of websites that contain false, misleading, and infringing content and material ("Regal Affiliate Websites").

4.      Upon information and belief, the Regal Affiliate Websites are promoted, directed, controlled, operated, or maintained by Defendants and other persons enrolled in Regal's Affiliate Program.

## PARTIES

5.      Plaintiff is a limited liability company under the laws of the State of Delaware, with its principal place of business located at 11835 W. Olympic Blvd, Suite 500, Los Angeles, CA 90064.

**SECOND AMENDED COMPLAINT**

6.     Regal is a limited liability company organized under the laws of the State of California, with its principal place of business in Burbank, California.

7.     Gallagher is a resident of the State of California and is the Chief Executive Officer and an owner of Regal.

8.     On information and belief, Felix is a resident of the State of California and is an owner, director, or agent of Regal, and is currently or has been the owner, operator, or creator of one or more Regal Affiliate Websites, and websites designed and intended to recruit persons to become Regal Affiliates, including websites that were located at imfsite.org, btfgold.com, and bringthefresh.com.

9.     On information and belief, Gamble is a resident of the State of Georgia and is an owner, director, or agent of Regal, and is currently or has been the owner, operator, or creator of one or more Regal Affiliate Websites, including but not limited to personalincome.org.

10.    On information and belief, Curto is a resident of the State of New Jersey and is an agent, affiliate, or partner of Regal and is currently or has been the owner, operator, or creator of one or more Regal Affiliate Websites, including but not limited to the website located at goldirarollovers.com, in addition to websites designed to solicit and recruit affiliates for Regal.

11.    On information and belief, Nichol is a resident of the State of Florida and is an agent, affiliate, or partner of Regal and is currently or has been the owner, operator, or creator of one or more Regal Affiliate Websites, including but not limited to the website located at iraplanningwithgold.com.

12.    On information and belief, Crestani is a resident of the State of California and is an agent, affiliate, or partner of Regal and is currently or has been the owner, operator, or creator of one or more Regal Affiliate Websites, including but not limited to gold401kcompanyreviews.com.

13.    Plaintiff is unaware of the true names and capacities of defendants sued herein as the Doe Defendants and, therefore, sues these defendants by such fictitious

SECOND AMENDED COMPLAINT

names Does 1 through 100 inclusive. Upon information and belief, each of the Doe Defendants either directly performed the acts alleged in this Complaint or were acting as the agent, principal, alter ego, employee, or representative of Regal and/or the Individual Defendants, or otherwise participated in the acts alleged herein with Regal and/or the Individual Defendants. Accordingly, the Doe Defendants are each liable for all of the acts alleged in this Complaint because they were the cause in fact and proximate cause of all injuries suffered by Plaintiff as alleged herein and Regal and the Individual Defendants are not only directly liable, but vicariously liable for the acts of these Doe Defendants. Plaintiff intends to amend this Complaint to state the true names of the Doe Defendants as their identities are revealed through discovery. Plaintiff also expressly reserves the right to assert additional claims against the Defendants including, but not limited to, claims under other states' unfair competition, unfair trade practices, and false advertising law to the extent supported by applicable facts learned through discovery.

## JURISDICTION

14.   This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), in that this case arises under the trademark laws of the United States, 15 U.S.C. §§ 1051, *et seq.*

15.   This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and U.S.C. § 1964(a) because this case arises under the federal RICO statutes, 18 U.S.C. §§ 1961, *et seq.*

16.   This Court has pendant jurisdiction under 28 U.S.C. § 1338(b), in that this case arises under claims joined with a substantial and related claim under the trademark laws of the United States.

17.   This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over all claims arising under state law, as such claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

**SECOND AMENDED COMPLAINT**

1  18.  Defendants are subject to personal jurisdiction of the Court because they
2  do or transact business, or are otherwise found and have purposefully availed
3  themselves of the privilege of doing business, in California and this District, by,
4  among other things, soliciting and conducting their business in California and this
5  District, negotiating and entering into agreements in California and this District,
6  conducting their business on and/or through an Internet web site, wrongfully using and
7  infringing upon Plaintiff's common law and registered trademarks, wrongfully diluting
8  Plaintiff's trademarks, and committing false advertising and unfair acts, in California
9  and this District.

10  **VENUE**

11  19.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because
12  Defendants conduct business within this district and have engaged in, and continue to
13  engage in, acts of advertising and offering goods and services to consumers located
14  within this district, and because a substantial part of the events or omissions giving rise
15  to the claims asserted herein occurred in this District. Defendants have wrongfully
16  used, diluted and infringed, and continue to wrongfully use, dilute and infringe
17  Plaintiff's registered and common law trademarks in this District, have engaged in
18  false advertising, unfair competition and other acts in this District, and, on information
19  and belief, are conducting and doing business in this District.

20  **FACTUAL ALLEGATIONS**
21  **PLAINTIFF AND THE GOLDLINE MARKS**

22  20.  Plaintiff is a long-standing dealer of precious metals and numismatic
23  products in the United States.

24  21.  Since 1974, Plaintiff has continuously provided, *inter alia*, precious
25  metals under and in connection with its famous GOLDLINE and related marks.

26  22.  Plaintiff has also used continuously the following GOLDLINE
27  INTERNATIONAL, INC. logo mark since 1995:

28

**SECOND AMENDED COMPLAINT**



23.    Plaintiff  has  also  used  continuously  the  following  GOLDLINE INTERNATIONAL logo mark since 2012:

24.    Plaintiff has expended, and continues to expend, a substantial amount of resources, money, time and effort promoting, marketing, advertising and building consumer and industry recognition and goodwill in its extremely valuable and famous GOLDLINE,     GOLDLINE     INTERNATIONAL,     INC.,     and     GOLDLINE INTERNATIONAL marks and brand.

25.    In addition to its common law rights, Plaintiff is the exclusive owner of all right, title and interest in the following United States trademark and service mark registrations (including all goodwill associated therewith), *inter alia*, collectively referred to herein as "GOLDLINE Marks":

(a)    GOLDLINE, which is registered on the Principal Register of the United States Patent and Trademark Office ("USPTO"), Reg. No. 1,040,091, for "Gold and other precious metals and ingots made therefrom; gold and silver coins";

(b)    GOLDLINE, which is registered on the Principal Register of the USPTO, Reg. No. 1,039,862, for "Providing information as to prices and/or market values of coins including those comprising precious metals, and information concerning the sale of gold and other precious metals to the order and specification of others";

(c)    GOLDLINE, which is registered on the Principal Register of the USPTO, Reg. No. 1,512,052, for "Financial services, namely,

7

precious metal and foreign currency investment, maintenance of statement accounts in relation thereto" and "Storage of precious metals";

(d)   GOLDLINE INTERNATIONAL and design, which is registered on the Principal Register of the USPTO, Reg. No. 4,487,394, for, *inter alia*, "Gold and other precious metals, their alloys, and ingots made therefrom; gold and silver coins; collectible and commemorative coins", "Providing financial information in the field of pricing and market values of coins including those comprising precious metals, and financial information concerning the field of trading in gold and other precious metals; providing a website featuring information and news in the field of finances, economics and the trading of precious metals; financial services, namely, precious metal investments ", and "Educational and entertainment services, namely, a continuing program about finances, economics and precious metals accessible by radio, satellite, audio and computer networks";

(e)   GOLDLINE INTERNATIONAL, INC. and design, which is registered on the Principal Register of the USPTO, Reg. No. 4,156,976, for, *inter alia*, "Gold and other precious metals, their alloys, and ingots made therefrom; gold and silver coins; collectible and commemorative coins", "Providing financial information in the field of pricing and market values of coins including those comprising precious metals, and financial information concerning the field of trading in gold and other precious metals; providing a website featuring information and news in the field of finances, economics and the trading of precious metals; financial services, namely, precious metal investments ", and "Educational and entertainment services, namely, a continuing program about finances, economics and precious metals accessible by radio, satellite, audio and computer networks".

8

**SECOND AMENDED COMPLAINT**

26.     Among other media and channels of trade, Plaintiff promotes its high quality products and services through display and use of its GOLDLINE Marks in the operation of its websites, radio, television and print advertising, YouTube video commercials, and through word of mouth.

27.     Plaintiff has continuously used the GOLDLINE Marks in commerce since the dates of first use, which date as far back as 1974. Plaintiff's use of the GOLDLINE Marks has been exclusive and most of the registrations of the GOLDLINE Marks have become incontestable.

28.     Plaintiff prominently features its GOLDLINE Marks in a wide variety of advertisements and marketing materials, including website materials, press releases, promotional brochures, signage and e-mails.

29.     Additionally, Plaintiff created a series of television commercials advertising and promoting Plaintiff's quality precious metals products and services. The commercials have run in California and markets throughout the United States and have been and remain prominently featured on Plaintiff's websites located at goldline.com and goldlineira.com, and posted on Plaintiff's YouTube Channel. The commercials include the GOLDLINE Marks.

30.     As a result of Plaintiff's use of the GOLDLINE Marks, Plaintiff's GOLDLINE Marks have become widely and favorably known to consumers. Consumers have come to recognize the GOLDLINE Marks as indicators of Plaintiff's quality precious metals products and services.

**Defendants' Infringement, Unfair Competition, and False Advertising**

31.     Regal offers and sells competing precious metals products and services to the products and services offered and sold by Plaintiff.

32.     Upon information and belief, Regal is a telemarketer as that term is defined by the FTC, FCC and various state laws. Regal is or has been required to register in numerous states as a telemarketer but has failed to do so. As a consequence,

1 | Regal was not and/or is not authorized to do business in numerous states and its sale of
2 | precious metals to residents of these states constitutes an unfair business practice.

3 |     33.    Regal and Regal Affiliates' failure to disclose Regal's lack of
4 | telemarketing registration is a material omission intended to deceive consumers into
5 | choosing Regal as its precious metals dealer.

6 |     34.    Both Plaintiff's products and services and Regal's competing products
7 | and services are sold in interstate commerce through the same or substantially similar
8 | channels of trade.

9 |     35.    Regal represents that it has approximately $70 million under management.
10 | Regal and the Regal Affiliates knew this statement was untrue and intended consumers
11 | to rely upon this material misrepresentation of fact in selecting Regal as their precious
12 | metals dealer.

13 |     36.    Regal represented that its employees are "experts" who offer "advice on
14 | setting up a long term tax deferred retirement plan, commonly called a Gold IRA…."
15 | Neither Regal nor its employees are licensed investment advisors and are not
16 | authorized to advise investors on setting up long term tax deferred retirement plans.
17 | These representations are false, material misrepresentations of fact upon which
18 | consumers rely in selecting Regal as their precious metals dealer. Further, Regal's
19 | conduct as an unlicensed investment advisor constitutes an unfair business practice.

20 |     37.    Upon information and belief, Regal created its Affiliate Program in 2011.
21 | Under its Affiliate Agreement with the Individual Defendants and Doe Defendants,
22 | Regal Affiliates were required to promote Regal and direct potential consumers to
23 | Regal's website.

24 |     38.    The Affiliate Agreement prohibited Regal Affiliates from disclosing that
25 | any website was created by Regal or was in any way endorsed by Regal.

26 |     39.    Regal Affiliates were paid (a) $30 for every lead interested in purchasing
27 | $5,000 or more in precious metals, (b) $30 for every lead who has a conversation with
28 | Regal lasting more than ten minutes; (c) 3% of every net purchase by a consumer

1    referred by the affiliate, and (d) 1% of every net purchase generated by a "second tier

2    affiliate" referred by the affiliate.

3         40.    Regal prohibited its affiliates from working with or providing any referral

4    services to any competing precious metals company.

5         41.    The Affiliate Agreement required all affiliates to prominently disclose the

6    affiliate is paid by Regal for referrals. However, upon information and belief, in many

7    instances Regal allowed and encouraged its Regal Affiliates to omit this disclosure on

8    the Regal Affiliate websites.

9         42.    Regal and the Regal Affiliates displayed false and misleading disclosures

10   to consumers with the intent to deceive such consumers about the relationship between

11   Regal and the Regal Affiliates. These false and misleading disclosures included, but

12   are not limited to: "Disclosure: We are a professional review site that receives

13   compensation from the companies whose products we review and recommend. We are

14   independently owned and the opinions expressed here are our own," and "Affiliate

15   Disclosure. We have created and curated content on this website in order to provide

16   information to help you make a decision for investing in a gold IRA. In some cases, it

17   is possible for us to receive compensation based upon actions you may take while on

18   or leaving this website."

19        43.    Regal had the authority to terminate the affiliate relationship for violations

20   of the terms and conditions of the Affiliate Agreement including any failure to comply

21   with the FTC Guides Concerning the Use of Endorsements and Testimonials in

22   Advertising.

23        44.    As part of its support of its affiliate program, Regal operated the website

24   https://www.regalgoldaffiliates.com/ which offered "high converting" lead forms and

25   "new attention grabbing creatives for you to use on your website(s)." Upon

26   information and belief, the information and files provided by Regal, including those

27   provided through this website, included false and misleading information regarding

28   Regal and the Regal Affiliate including, but not limited to, false narratives, such as that

the purported author, who in reality is a made-up persona, is "happy to tell you that after countless months of research, I have found the most reputable company . . . . I have worked with them personally, and couldn't be more pleased . . . . I urge you to get in contact with Regal Assets."

45.     Regal and Gallagher reviewed and monitored all Regal Affiliate Websites which generated leads or sales no less than once per month.

46.     Regal knew the Regal Affiliate Websites violated the FTC Guides Concerning the Use of Endorsements and Testimonials in Advertising including, but not limited to, failing to disclose the Regal Affiliates' material relationship with and compensation from Regal. However, in furtherance of Defendants' conspiracy to mislead consumers, in many instances Regal failed to take sufficient action, if any action at all, to require the Regal Affiliate websites to comply with the FTC Guides or the Affiliate Agreement's terms of service.

47.     Regal knew the Regal Affiliate Websites included false and misleading information including, but not limited to, false and misleading information about Regal, false and misleading biographies, false and misleading photographs of "reviewers," false and misleading statements regarding the website owner's credentials and false and misleading statements regarding the due diligence performed by the website owner. However, in furtherance of Defendants' conspiracy to mislead consumers, Regal took no action to require the Regal Affiliate websites to remove the false and misleading information.

48.     Upon information and belief, Regal and its agents and employees would direct consumers to the Regal Affiliate Websites and falsely inform consumers the Regal Affiliate Websites were independent and unbiased and failed to disclose that Regal compensated the Regal Affiliates for referrals and sales. These statements and omissions were intended to deceive consumers into choosing Regal as their precious metals dealer.

**SECOND AMENDED COMPLAINT**

49.     In addition to its website, Regal promotes its products and services through Regal's Affiliate Program whereby Regal induces third parties ("Regal Affiliates"), including the Individual Defendants and Doe Defendants, to operate Regal Affiliate Websites, which contain false and misleading information about Regal, infringe the GOLDLINE Marks, falsely disparage Plaintiff and its products and services, mislead and confuse consumers, and/or deceptively endorse and recommend Regal's products and services without sufficient disclosures, if any disclosure, of the website's relationship to Regal.

50.     To carry out or to further the enterprise and conduct alleged in this Complaint, Defendants created and currently are or have been maintaining, owning, or operating one or more Regal Affiliate Websites, or otherwise controlling and directing the content of one or more Regal Affiliate Websites including, but not limited to, Regal Affiliate Websites that are or were located at the following domain names:

(a)     goldiracomparisons.org;

(b)     goldirabuyersguide.com;

(c)     goldirabuyersguide.net;

(d)     iragoldreviews.com;

(e)     howdoesanirawork.com;

(f)     topgoldiracustodian.com;

(g)     goldirareporter.com;

(h)     iraplanningwithgold.com;

(i)     reviewsofgolddealers.com;

(j)     howdoesanirawork.com;

(k)     goldiraclub.com;

(l)     gold-401k.info;

(m)     topgoldirarollover.com;

(n)     thebestgoldirarolloverguide.net;

(o)     personalincome.org;

| | | |
|---|---|---|
| 1 | (p) | goldirarollovers.com; |
| 2 | (q) | goldirarollovercounsel.com; |
| 3 | (r) | goldrolloverguide.com; |
| 4 | (s) | bestgoldiracompany.com; |
| 5 | (t) | goldiranewyorkpros.com; |
| 6 | (u) | bestiracompany.com; |
| 7 | (v) | ira-to-gold.com; |
| 8 | (w) | goldiraus.com; |
| 9 | (x) | gold401krollovers.org; |
| 10 | (y) | rolloveriratogold.com; |
| 11 | (z) | goldiravsgoldetf.com; |
| 12 | (aa) | bestgoldiras.net; |
| 13 | (bb) | gold-ira-investment.org; |
| 14 | (cc) | homefi-ontstudios.com; |
| 15 | (dd) | bestgoldiracompany.com; |
| 16 | (ee) | getgoldira.net; |
| 17 | (ff) | goldirainvesting.com; |
| 18 | (gg) | goldbackediras.org; |
| 19 | (hh) | goldiniras.net; |
| 20 | (ii) | goldinvestmentcompanies.org; |
| 21 | (jj) | silveiras.org; |
| 22 | (kk) | 401kgoldinvesting.org; |
| 23 | (ll) | 401kgoldira.org; |
| 24 | (mm) | 401kgoldrollover.net; |
| 25 | (nn) | 401krollovertogold.net; |
| 26 | (oo) | 401ksilverinvesting.com; |
| 27 | (pp) | bestplacestobuygold.org; |
| 28 | (qq) | buygoldbricks.net; |

**SECOND AMENDED COMPLAINT**

| | | |
|---|---|---|
| 1 | (rr) | buygoldbullionbarsonline.org; |
| 2 | (ss) | convert401ktoira.com; |
| 3 | (tt) | gold401kro11over.org; |
| 4 | (uu) | goldbacked401k.com; |
| 5 | (vv) | goldbackedd401k.net; |
| 6 | (ww) | goldbackedirainvesting.com; |
| 7 | (xx) | goldbuyingguide.net; |
| 8 | (yy) | goldcoinsforsales.net; |
| 9 | (zz) | goldinvestmentcompanies.org; |
| 10 | (aaa) | goldinvestmentsira.net; |
| 11 | (bbb) | goldiracustodian.net; |
| 12 | (ccc) | goldirasretirement.com; |
| 13 | (ddd) | goldirasrollover.com; |
| 14 | (eee) | goldto401krollover.com; |
| 15 | (fff) | physicalgoldira.net; |
| 16 | (ggg) | preciousmetalsiras.org; |
| 17 | (hhh) | reputablegolddealers.org; |
| 18 | (iii) | rollingover401kgold.com; |
| 19 | (jjj) | rollover401kgold.com; |
| 20 | (kkk) | silverbarsforsales.org; |
| 21 | (lll) | silverbullionforsales.com; |
| 22 | (mmm) | silvercoinsforsales.com; |
| 23 | (nnn) | bestgoldiracustodians.com; |
| 24 | (ooo) | buygoldbullionbarsonline.org; |
| 25 | (ppp) | silverirarollover.net; |
| 26 | (qqq) | goldiracustodians.org; |
| 27 | (rrr) | goldiraguide.org; |
| 28 | (sss) | gold401kcompanyreviews.com; |

**SECOND AMENDED COMPLAINT**

(ttt)   imfsite.org; and

(uuu)  silveriracustodian.com.

51.   This list set forth in Paragraph 50 is not intended to reflect all Regal Affiliate Websites which contained false or misleading information or which failed to disclose the material relationship between Regal and its affiliates. The content displayed and information communicated throughout the Regal Affiliate Websites has changed over time.

52.   Regal pays the Regal Affiliates, including the Individual Defendants and Doe Defendants, a fee for each referral to Regal as well as a percentage of the proceeds from each sale to Regal through their respective Regal Affiliate Websites which use without authorization the GOLDLINE Marks in a manner that has or is likely to cause consumer confusion, fraudulently disparage Plaintiff and its services, and/or deceptively advertise, endorse, and recommend Regal's services.

53.   Upon information and belief, the Defendants perpetuate the operation of their respective Regal Affiliate Websites, including infringement of the GOLDLINE Marks, fraudulent disparagement of Plaintiff and its services, and/or deceptive endorsement of Regal's services, by using the proceeds paid by Regal for each sale diverted from Plaintiff through their respective websites.

54.   Using scripts and website materials generated, prepared, and provided for by Regal in furtherance of the unlawful acts, conspiracy, and enterprise alleged in this Complaint, Defendants have deceived and continue to deceive consumers by purporting to offer objective and independent evaluations of and facts related to precious metals dealers on their websites.

55.   Defendants operate Regal Affiliate Websites with such deceivingly innocent and reputable names as the "Gold IRA Club" at the domain address goldiraclub.com, and the "Gold IRA Buyers Guide" at the domain address goldirabuyersguide.com, that consumers are misled into believing they are legitimate

1   independent and unbiased websites that are in some way endorsed, authorized, or
2   subscribed to by Plaintiff.

3        56.    Upon information and belief, Defendants or their agents, affiliates, or
4   partners, also engage in telemarketing with respect to those consumers that visit the
5   Regal Affiliate Websites; however, upon information and belief, none of the
6   Defendants, their agents, affiliates, or partners are properly licensed or registered to
7   engage in such telemarketing within those states which require registration.

8        57.    By offering false and misleading representations of fact concerning Regal,
9   the independence and/or unbiased recommendations of Regal, Plaintiff, Plaintiff's
10  goods and services, and other competitors of Regal, as well as false statements
11  concerning consumer ratings and customer complaints for Plaintiff and/or Regal,
12  Defendants mislead consumers to purchase precious metals from Regal, to the
13  financial gain of Defendants and to the detriment of Plaintiff.

14       58.    Through their respective Regal Affiliate Websites, Defendants have
15  falsely represented and continue to falsely represent that, *inter alia*, (1) Plaintiff is
16  involved in pending litigation with the City of Santa Monica, (2) Plaintiff has a Better
17  Business Bureau rating of "F," (3) the reviewer provides independent, unbiased and
18  professional reviews, (4) the reviewer is occasionally paid by external firms in order to
19  conduct honest and impartial reviews of products and/or services, (5) the reviewer is
20  part of "a team of financial experts that regularly write about current market conditions
21  in relation to the precious metals industry," (6) Plaintiff's rating with the BCA is "F,"
22  (7) Regal has millions of dollars under management, (7) Regal is endorsed by various
23  celebrities and/or public figures, (8) Regal is an IRA custodian, and (9) Regal offers
24  the most competitive prices. Defendants have made and continue to make such
25  statements with knowledge of their falsity and with the intent to deceive consumers.

26       59.    The website materials and scripts provided by Regal to Defendants for use
27  in the Regal Affiliate Websites also include purported ratings of the respective
28  providers of precious metals, including Plaintiff, based upon reviews attributed to

1  TrustLink.org ("TrustLink"), which, upon information and belief, is a privately-owned
2  entity which receives compensation from clients, such as Regal, for obstructing
3  individuals from submitting unfavorable reviews for such clients, while permitting
4  unfavorable reviews to be posted for such clients' competitors.

5      60.   Defendants   purchased   advertising   keywords   which   include   the
6  GOLDLINE Marks, with the intent that the Regal Affiliate Websites will be presented
7  by search engines when consumers enter search terms, including the GOLDLINE
8  Marks, in search of Plaintiff.

9      61.   When consumers searching for Plaintiff enter search terms including one
10 or more of the GOLDLINE Marks into a search engine, many of the search results link
11 to the Regal Affiliate Websites and are not identified as ads, thus compounding the
12 confusion and deception of consumers.

13     62.   Through one or more of the respective Regal Affiliate Websites, including
14 but   not   limited   to   reviewsofgolddealers.com,   howdoesanirawork.com,   and
15 iraplanningwithgold.com, Defendants infringe Plaintiff's GOLDLINE Marks by
16 presenting Plaintiff's GOLDLINE Marks and logo, or confusingly similar versions
17 thereof, as false hyperlinks on web pages within the Regal Affiliate Websites;
18 consumers are then deceived and mislead into believing that if the consumer clicks on
19 GOLDLINE Marks, logo, or confusingly similar versions of the same, he or she will
20 be directed to GOLDLINE when, in reality, clicking on the deceptively labeled
21 hyperlink directs the consumer to commercial websites promoting and selling Regal's
22 products and services.

23     63.   Regal has conspired with Individual Defendants and Doe Defendants to
24 infringe Plaintiff's GOLDLINE Marks, to engage in deceptive and unfair business
25 practices, unfair competition, and false advertising, all with the intent to mislead and
26 misdirect consumers and divert profits from Plaintiff to Regal.

27     64.   Regal, Gallagher, and Felix are acting in concert to induce, encourage,
28 and facilitate the remaining Individual Defendants' and the Doe Defendants'

1    infringement of Plaintiff's GOLDLINE Marks, deceptive and unfair business practices,

2    and false advertising.

3        65.    Individual and Doe Defendants operate their respective Regal Affiliate

4    Websites under the direction and control of and/or in concert with Regal, Gallagher, or

5    Felix to carry out and to further the infringement of Plaintiff's GOLDLINE Marks,

6    deceptive and unfair business practices, false advertising and other illegal conduct

7    alleged in this Complaint.

8        66.    Upon information and belief, Defendants created "blackhat" sites, which

9    link or have linked to Regal Affiliate Websites to improve the organic search results

10   for precious metals companies, IRA precious metals, precious metals company

11   reviews, IRA gold company reviews and other search terms used by consumers to

12   identify potential precious metals dealers. These blackhat sites include, but are not

13   limited to, the following:

14              (a)    http://www.portlandwebpagedesign.com;

15              (b)    http://www.ykysh.net;

16              (c)    http://www.1wrestlingradio.com;

17              (d)    http://www.jk41.com;

18              (e)    http://www.211seok.org;

19              (f)    http://www.popjuggling.com;

20              (g)    http://www.podschampionship.com;

21              (h)    http://www.insurancelow.org;

22              (i)    http://www.4siteforum.com;

23              (j)    http://www.jeffersonhubbell.com;

24              (k)    http://www.yifengre.com;

25              (l)    http://www.healingrooms-knoxtn.com;

26              (m)    http://www.blackplanet.com/your_page/blog/index.html?prof

27   ile_id=63887290&profile_name=goldlinegoldreviews&user_id=63887290&username

28   =goldlinegoldreviews;

1          (n)    http://oriflameweb.pp.ua/video.php?v=LKdl7ElMToM;

2          (o)    http://goldline-of-santa-

3 monica.pissedconsumer.com/goldline-of-santa-monica-scam-goes-to-us-attorney-

4 20080810130980.html;

5          (p)    http://xgsy.net/article/goldline-complaints.html;

6          (q)    http://articlesbykris.blogspot.com/2013_10_01_archive.html;

7          (r)    http://hostmonsterz.info/goldline/goldline-reviews-why-i-

8 did-not-choose-goldline.html;

9          (s)    http://www.wjtv.com/story/27669365/goldsilveriraplanscom-

10 publishes-information-on-current-gold-prices;

11          (t)    http://coreawar.or.kr/xe/page_0204/6577?ckattempt=1;

12          (u)    http://badasscontent.com/GetYourFreeGold-IRA-Kit;

13          (v)    http://connect-

14 universum.com/tag/regal%20assets%20customer%20reviews/;

15          (w)    https://terranreasoner.wordpress.com/;

16          (x)    http://thechange.kr/index.php?document_srl=18153&ckattem

17 pt=1&mid=openweek2013_program;

18          (y)    http://aurix.co.kr/xe/aurix_installcar/527;

19          (z)    http://www.eyelevelbeaverton.com/xe/Promotions/1333164;

20          (aa)   http://anthony23i3iiiblog.blog.com/2014/11/12/a-secret-

21 weapon-for-gold-ira-reviews/;

22          (bb)   http://www.netvouz.com/lovelylovely/tag/gold;

23          (cc)   http://beihaidaoyou.com/area7/?p=163

24    67.    A consumer's search for Plaintiff by entering one or more of the

25 GOLDLINE Marks into a search engine retrieves a number of misleading search

26 results that misdirect the consumer searching for the Plaintiff to different websites

27 owned or operated by Defendants that use the GOLDLINE Marks in a way likely to

28 cause confusion and without authorization of Plaintiff.

68.   A consumer misdirected to one of the Defendants' Regal Affiliate Websites by searching for Plaintiff is likely to be confused by the Defendants' use of the GOLDLINE Marks, which goes beyond merely using the word mark GOLDLINE to refer to Plaintiff, but uses the famous GOLDLINE INTERNATIONAL, INC. and GOLDLINE INTERNATIONAL design marks in a way that has or is likely to cause confusion or mistake or to deceive consumers as to the origin, sponsorship, affiliation, or endorsement of Defendants' Regal Affiliate Websites and their products and services.

69.   Ultimately, the Defendants' Regal Affiliate Websites direct the user to Regal's website for its precious metals products and services that are related to and compete directly with Plaintiff's GOLDLINE products and services.

70.   Further, a consumer directed to one of the Defendants' Regal Affiliate Websites by searching for Plaintiff is likely to be confused by the Defendants' use of the GOLDLINE Marks, which are used by the Defendants as deceptive and misleading hyperlinks to Regal's website or the Defendants' Regal Affiliate Websites.

71.   The use of Plaintiff's GOLDLINE Marks to label hyperlinks throughout the Regal Affiliate Websites is likely to cause confusion or mistake or to deceive consumers as to the origin, sponsorship, affiliation, or endorsement of Defendants' web sites and their products and services.

72.   Plaintiff has not authorized Defendants' use of the GOLDLINE Marks in any form or variation. Plaintiff has not approved, authorized, sponsored, or endorsed any of the services offered by Regal Affiliates nor Regal's products or services.

73.   Defendants' competitive products and services are targeted to substantially the same consumer base as Plaintiff's GOLDLINE products and services.

74.   Customers familiar with Plaintiff's GOLDLINE Marks and looking for the Plaintiff's GOLDLINE products and services would likely believe, incorrectly, that the Regal Affiliate Websites relate to or will direct the customers to Plaintiff's GOLDLINE products and services, a means to purchase the same, or accurate and

1    reliable information regarding the same; or that Plaintiff has sponsored, endorsed, or

2    approved of Defendants' Regal Affiliate Websites, the content therein, or the products

3    and services offered through the Regal Affiliate Websites.

4         75.   Defendants' use of the GOLDLINE Marks in commerce improperly

5    trades on the goodwill Plaintiff has established in the GOLDLINE Marks in order to

6    improperly attract consumers to Regal and its competitive products and services.

7         76.   On April 29, 2014, Plaintiff sent a cease and desist letter to Regal

8    regarding the Regal Affiliate Websites. Since receiving that letter, Regal has refused to

9    either remove or fully correct the content on all of the Regal Affiliates Websites or

10   otherwise require that the Individual Defendants do so; instead, upon information and

11   belief, Regal and the Regal Affiliates, including the Individual and Doe Defendants,

12   have maintained the Regal Affiliate Websites.

13        77.   Upon information and belief, Regal instructed the Individual and Doe

14   Defendants to represent themselves as independent, unbiased third parties and engage

15   in the above specified unlawful, unfair and deceptive behavior, and Regal has, at all

16   times, been aware of this practice. At the very least, Regal has been aware of the

17   practice since receiving Plaintiff's cease and desist letter and the filing of this Lawsuit.

18        78.   Upon information and belief, Regal tracks the performance of Individual

19   and Doe Defendants for purposes of determining their compensation, and knows which

20   customers are drawn to Regal through which of their respective Regal Affiliate

21   Websites. Regal benefits from the above specified unlawful, unfair and deceptive

22   behavior of Individual and Doe Defendants by receiving customers who believe

23   misinformation about Plaintiff, and by receiving the personal contact information of

24   website viewers without their permission.

25        79.   Upon information and belief, at all times relative times, each of the

26   Defendants was the agent, aider and abettor, and/or co-conspirator of one or more of

27   the other Defendants, was acting within the course and scope of the agency and/or in

28   furtherance of such conspiracy and enterprise, and aided and assisted one or more of

the other Defendants in committing the wrongful and unlawful acts alleged herein, and is liable to Plaintiff as alleged herein not only directly but also vicariously for the acts of their agents and co-conspirators.

80.   Despite having actual and constructive knowledge of Plaintiff's rights in the GOLDLINE Marks and despite having received express notice of the same, Defendants have failed to cease their infringing and unlawful activities and continue to advertise, market, promote, offer for sale, and sell Regal's competitive products and services using the GOLDLINE Marks without authorization from Plaintiff and in complete and willful disregard of Plaintiff's federal and common law trademark rights.

81.   Upon information and belief, Defendants created or adopted the Regal Affiliate Websites with knowledge of Plaintiff's GOLDLINE Marks and with the intent to deceive consumers and to cause confusion among purchasers for the purpose of misappropriating and benefiting from the goodwill and public recognition associated with Plaintiff's GOLDLINE Marks and by diverting sales from Plaintiff to Regal.

82.   The false, deceptive and misleading claims throughout the content of the Defendants' Regal Affiliate Websites speak to and address an inherent quality and characteristic of Plaintiff and Regal products and services.

83.   Upon information and belief, Defendants' conduct in using Plaintiff's GOLDLINE Marks is intentional and deliberate.

84.   Upon information and belief, Defendants have had access to and were, or should have been, aware of Plaintiff's prior use of its GOLDLINE Marks and corresponding rights therein and the actions of Defendants were undertaken with an intentional, willful, or malicious intent to trade upon the goodwill associated with and the distinctiveness, strength, and value of Plaintiff's GOLDLINE Marks and to evoke the same image in the minds of consumers.

**SECOND AMENDED COMPLAINT**

85.    Defendants' Regal Affiliate Websites improperly and broadly use the GOLDLINE Marks and falsely represent to consumers that such websites objectively and independently evaluate and rank precious metals dealers including Plaintiff.

86.    The relationships between the Individual and Doe Defendants and Regal are not adequately disclosed, if disclosed at all, on the Defendants' respective Regal Affiliate Websites in contravention of, *inter alia*, 16 C.F.R. § 435.2(a), 15 U.S.C. § 45(n), *FTC Policy Statement on Deception, FTC Policy Statement on Unfairness, FTC Guides Concerning the Use of Endorsements and Testimonials in Advertising, FTC Guide .com Disclosures.*

## Defendants are Causing Irreparable Harm to Plaintiff

87.    By reason of Defendants' unlawful acts, Plaintiff has suffered and will continue to suffer damage to its business, reputation and goodwill, as well as the loss of sales and profits Plaintiff would have realized but for Defendants' acts.

88.    Upon information and belief, unless restrained and enjoined, Defendants will continue to infringe Plaintiff's rights in the GOLDLINE Marks and continue to cause irreparable injury to Plaintiff by:

      a.    Depriving Plaintiff of its right to use and control the use of its GOLDLINE Marks;

      b.    Creating a likelihood of confusion, mistake and deception among consumers and the trade as to the sponsorship, endorsement, or approval of the content on Regal Affiliate Websites;

      c.    Causing harm to the goodwill associated with GOLDLINE Marks and diluting the capacity of GOLDLINE Marks to differentiate Plaintiff's products and services from others; and

      d.    Causing Plaintiff to lose sales.

89.    Plaintiff's remedy at law is not adequate to compensate Plaintiff for all of the resulting injuries, damages and losses arising from Defendants' actions.

**SECOND AMENDED COMPLAINT**

## **FIRST CLAIM FOR RELIEF**

### **(Trademark Infringement, 15 U.S.C. §§ 1114(a), 1125(a))**

90.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 89 of this Complaint.

91.     Plaintiff's GOLDLINE Marks are inherently distinctive and/or have acquired secondary meaning among the trade, with consumers, and with the relevant purchasing public. Through Plaintiff's use, consumers and the relevant purchasing public have come to use the GOLDLINE Marks to associate, identify, and distinguish Plaintiff as the source of origin of Plaintiff's investment products and services.

92.     Without Plaintiff's license, consent, or authorization, Defendants have used, and continue to use, the GOLDLINE Marks or confusingly similar variations thereof, on or in connection with marketing, distributing, advertising, promoting, offering for sale, and selling its competing products and/or services.

93.     Specifically, by using the GOLDLINE Marks, particularly Plaintiff's registered GOLDLINE INTERNATIONAL and GOLDLINE INTERNATIONAL INC. design marks, and/or confusingly similar variations thereof, in purportedly unbiased, professional reviews or summaries of Plaintiff's products and services, Defendants have caused, or are likely to cause, confusion, mistake, or to deceive the public as to the sponsorship, endorsement, or approval by Plaintiff of Defendants' products, services, or commercial activities. In this regard, Defendants' use of the GOLDLINE Marks extends beyond merely using the GOLDLINE trade name to identify Plaintiff as the source of goods or services.

94.     Additionally, by using the GOLDLINE Marks, including the domain name of Plaintiff's website, goldline.com, and Plaintiff's registered GOLDLINE INTERNATIONAL and GOLDLINE INTERNATIONAL INC. design marks, and/or confusingly similar variations thereof, throughout some of the Regal Affiliate Websites as false and deceptive hyperlinks, Defendants have caused, or are likely to cause, confusion, mistake, or to deceive the public as to the source, sponsorship,

endorsement, or approval by Plaintiff of Defendants' products, services, or commercial activities. The likelihood of confusion, both initial interest and actual confusion, is great because the consumer believes he or she is clicking a link that will direct him or her to Plaintiff or to information about Plaintiff's good or services, when in reality the consumer is directed to a page on a Regal Affiliate webpage that promotes, advertises, and endorses Regal.

95.    As evidenced by Defendants' use of the GOLDLINE Marks as search term keywords and adwords, coupled with Defendants' use of the GOLDLINE Marks, as false hyperlinks or otherwise, throughout the Regal Affiliate Websites, Defendants' acts of infringement have been committed with the intentional, willful, or malicious intent to cause confusion, mistake, to deceive, and to trade upon the goodwill associated with the GOLDLINE Marks and were otherwise deliberate, knowing, willful and/or in bad faith.

96.    Defendants' acts constitute willful trademark infringement in violation of 32(a) of the Lanham Act, 15 U.S.C. § 1114(a), 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under common law.

97.    Defendants' intentional infringement of Plaintiff's GOLDLINE Marks is an exceptional case, entitling Plaintiff to recover treble damages, treble profits, and attorneys' fees under 15 U.S.C. § 1117(a).

98.    Defendants' willful and intentional infringing activities have caused and are causing great and irreparable injury and damage to Plaintiff's business, profits, goodwill, and reputation, entitling Plaintiff to an award of damages, including but not limited to the Defendants' ill-gotten profits from their infringing activity.

99.    Additionally, the amount of Plaintiff's damages cannot be ascertained at this time and, unless preliminarily and permanently restrained, will cause further irreparable injury and damage, leaving Plaintiff with no adequate remedy at law.

100.    By reason of the foregoing, Plaintiff is entitled to injunctive relief against Defendants, and anyone acting in concert with or under the direction and control of

1  Defendants, to restrain further acts of infringement and, after trial, to recover damages,
2  including attorneys' fees and costs, Defendants' ill-gotten profits, costs of corrective
3  advertising, any enhanced damages justified by the willful and intentional nature of
4  such acts, and other damages according to proof at trial, including costs and attorneys'
5  fees.

### SECOND CLAIM FOR RELIEF

### (False Advertising and Unfair Competition, 15 U.S.C. § 1125(a))

8      101.   Plaintiff re-alleges and incorporates by reference the allegations contained
9  in Paragraphs 1 through 100 of this Complaint.

10     102.   The false, deceptive, and misleading claims, paid-for reviews, and
11  advertisements concerning Regal, Plaintiff, and/or Regal's other competitors, are
12  generated and provided by Regal, Gallagher, or Felix, or their agents or employees in
13  interstate commerce, and published by Regal, the Individual Defendants, and the Doe
14  Defendants in interstate commerce through their respective Regal Affiliate Websites,
15  and speak to and address inherent qualities and characteristics of the products and
16  services of Plaintiff, Regal, and/or Regal's other competitors.

17     103. False, deceptive and misleading claims, purported statements or
18  descriptions of fact, paid-for reviews, and advertisements on the Regal Affiliate
19  Websites disparage Plaintiff and Regal's other competitors.

20     104. False, deceptive and misleading claims, purported statements or
21  descriptions of fact, paid-for reviews, and advertisements on the Regal Affiliate
22  Websites promote and endorse Regal.

23     105. The false, deceptive and misleading claims, purported statements or
24  descriptions of fact, paid-for reviews, and advertisements were made with Defendants'
25  knowledge of their falsity and with the intent to mislead consumers into choosing
26  Regal as their precious metals dealer.

27     106.   By generating and publishing materially false, deceptive and misleading
28  claims, purported statements or descriptions of fact, paid-for reviews, and

advertisements concerning Regal, Plaintiff, and/or Regal's other competitors in interstate commerce, the Defendants have and continue to deceive consumers visiting the Regal Affiliate Websites.

107.   These false, deceptive, and misleading statements have or are likely to mislead or confuse consumers as to the quality of Plaintiff's services and goods and/or Defendants' services and goods and otherwise mislead the public and divert business from Plaintiff to Regal.

108.   The confusion of consumers caused by the false, deceptive, and misleading statements concerning Regal, Plaintiff, and/or Regal's other competitors is increased and compounded by Defendants' inadequate disclosure and, in some instances, complete failure to disclose the relationship with Regal.

109.   Defendants made these false, deceptive, and misleading statements concerning Regal, Plaintiff, and/or Regal's other competitors, in the course of advertising their own services and the products and services of Regal.

110.   Through and as a result of the website materials and scripts generated, prepared, and provided for by Regal, and the false, deceptive, and misleading advertising on the Regal Affiliate Websites, Plaintiff has suffered irreparable harm. Unless Defendants are enjoined from continuing these unlawful acts, Plaintiff will suffer irreparable harm.

111.   As a direct and proximate result of the false, deceptive and misleading claims, purported statements or descriptions of fact, and advertisements concerning Regal, Plaintiff, and/or Regal's other competitors, generated and published by Defendants in interstate commerce, Plaintiff has suffered damages to its business, profits, goodwill, and reputation, entitling Plaintiff to an award of damages, including but not limited to the Defendants' ill-gotten profits from their infringing activity.

112.   This is an exceptional case under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), entitling Plaintiff to recover treble damages, treble profits, and attorneys' fees and up to three times its actual damages.

**SECOND AMENDED COMPLAINT**

113.   Additionally, the amount of Plaintiff's damages cannot be ascertained at this time and, unless preliminarily and permanently restrained, Defendants' unlawful conduct will cause further irreparable injury and damage, leaving Plaintiff with no adequate remedy at law. Thus, Plaintiff is entitled to injunctive relief against Defendants, and anyone acting in concert with Defendants, to restrain further acts of false advertising and unfair competition.

114.   Pursuant to Section 36 of the Lanham Act, 15 U.S.C. § 1118, Plaintiff is entitled to a destruction order requiring all advertisements in Regal and its Regal Affiliates' possession bearing the false or misleading descriptions or representations be delivered up and destroyed.

## THIRD CLAIM FOR RELIEF

### (False Designation of Origin, 15 U.S.C. § 1125(a))

115.   Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 114 of this Complaint.

116.   Plaintiff's GOLDLINE Marks are inherently distinctive and/or have acquired secondary meaning among the trade, with consumers, and with the relevant purchasing public. Through Plaintiff's use, consumers and the relevant purchasing public have come to use the GOLDLINE Marks to associate, identify, and distinguish Plaintiff as the source of origin of Plaintiff's investment products and services.

117.   Without Plaintiff's license, consent, or authorization, Defendants have used, and continue to use, the GOLDLINE Marks or confusingly similar variations thereof, on or in connection with marketing, distributing, advertising, promoting, offering for sale, and selling its competing products and/or services.

118.   Specifically, by using the GOLDLINE Marks, including the domain name of Plaintiff's website, goldline.com, and Plaintiff's registered GOLDLINE INTERNATIONAL and GOLDLINE INTERNATIONAL INC. design marks, and/or confusingly similar variations thereof, throughout some of the Regal Affiliate Websites as false and deceptive hyperlinks, Defendants have caused, or are likely to cause,

29

**SECOND AMENDED COMPLAINT**

confusion, mistake, or to deceive the public as to the source, origin, sponsorship, endorsement, or approval by Plaintiff of Defendants' products, services, or commercial activities. The likelihood of confusion, both initial interest and actual confusion, is great because the consumer believes he or she is clicking a link that will direct him or her to Plaintiff or to information about Plaintiff's good or services, when in reality the consumer is directed to a page on a Regal Affiliate webpage that promotes, advertises, and endorses Regal.

119.   Defendants' false designation of origin has been committed with the intentional, willful, or malicious intent to cause confusion, mistake, to deceive, and to trade upon the goodwill associated with the GOLDLINE Marks and is otherwise deliberate, knowing, willful and/or in bad faith.

120.   Defendants' willful misconduct entitles Plaintiff to treble damages, an award of attorneys' fees under 15 U.S.C. § 1117(a).

121.   Defendants' willful misconduct has caused and is causing great and irreparable injury and damage to Plaintiff's business, profits, goodwill, and reputation, entitling Plaintiff to an award of damages, including but not limited to the Defendants' ill-gotten profits from their misconduct.

122.   Additionally, the amount of Plaintiff's damages cannot be ascertained at this time and, unless preliminarily and permanently restrained, will cause further irreparable injury and damage, leaving Plaintiff with no adequate remedy at law.

123.   By reason of the foregoing, Plaintiff is entitled to injunctive relief against Defendants, and anyone acting in concert with or under the direction and control of Defendants, to restrain further acts of misconduct and, after trial, to recover treble damages, including attorneys' fees and costs, Defendants' ill-gotten profits, costs of corrective advertising, any enhanced damages justified by the willful and intentional nature of such acts, and other damages according to proof at trial, including costs and attorneys' fees.

**SECOND AMENDED COMPLAINT**

**FOURTH CLAIM FOR RELIEF**

**(False Advertising in Violation of California**

**Business & Professions Code §§ 17500, *et seq.*)**

124.   Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 123 of this Complaint as if fully set forth herein.

125.   Defendants have generated and published false, deceptive and misleading claims, purported statements or descriptions of fact, and advertisements concerning Regal, Plaintiff, and/or Regal's other competitors, and have used the GOLDLINE Marks and/or confusingly similar variations thereof throughout the Regal Affiliate Websites with the intent directly or indirectly to induce the public to enter into an obligation relating to Regal's precious metals products and services.

126.   By offering false and misleading representations of fact concerning Plaintiff and/or other competitors of Regal, as well as false statements concerning consumer ratings and customer complaints for Regal, Defendants mislead consumers to purchase precious metals from Regal, to the financial gain of Defendants and to the detriment of Plaintiff.

127.   Defendants' advertising and false statements were and are untrue or misleading and likely to deceive the public, and Defendants' unlicensed, unconsented to, and otherwise unauthorized use of the GOLDLINE Marks and/or confusingly similar variations thereof in Defendants' advertisements, promotional materials, and/or website content on or in connection with marketing, distributing, advertising, promoting, offering for sale, and selling Defendants' similar products and/or services, on information and belief, has caused and is likely to continue to cause the general public, trade, consumers, and the relevant purchasing public to be confused, misled and deceived as to the source of origin of Defendants' goods and/or services, and, further, to confuse, mislead, and deceive such persons into wrongly believing that Defendants' business is affiliated with, connected with, associated with, sponsored by, endorsed by, administered by, supervised by, or otherwise connected with Plaintiff.

128.   In making and disseminating the website materials and content of the Regal Affiliate Websites, Defendants knew, or by the exercise of reasonable care should have known, that their website materials and content were untrue or misleading.

129.   Defendants' acts constitute the use of deceptive, untrue, and misleading advertising, of which Defendants knew or should have known, thereby impairing the goodwill of Plaintiff and otherwise adversely affecting the business and reputation of Plaintiff.

130.   Defendants' acts of untrue and misleading advertising alleged above have caused and will continue to cause damage and irreparable harm to Plaintiff, and are likely to continue unabated, thereby causing further damage and irreparable harm to Plaintiff, to the goodwill and business reputation symbolized by and associated with their valuable GOLDLINE Marks, and to the general public.

131.   Upon information and belief, as a result of the Defendants' false advertising, Plaintiff has lost to and is entitled to recover from Defendants, profits in which Plaintiff had an identifiable vested interest.

132.   Plaintiff is entitled to recover damages under common law.

133.   As a result of the Defendants' false advertising and unfair competition, Plaintiff will suffer irreparable injury in an amount that cannot be ascertained at this time if Defendants are not enjoined.

134.   By reason of the foregoing, Plaintiff is entitled to equitable relief, including preliminary and permanent injunctive relief against Defendants, and anyone acting in concert with Defendant, prohibiting Defendants from continuing such acts of false and misleading advertising and, after trial, to recover from Defendants in restitution the ill-gotten profits of Defendants in which Plaintiff has an identifiable vested interest and any and all damages recoverable under common law.

**SECOND AMENDED COMPLAINT**

1

## FIFTH CLAIM FOR RELIEF

2

### (Unfair Competition in Violation of California

3

### Business & Professions Code §§ 17200, *et seq.*)

4      135.  Plaintiff re-alleges and incorporates by reference the allegations contained

5   in Paragraphs 1 through 134 of this Complaint.

6      136.  The unlawful and misleading acts of Defendants, including trademark

7   infringement, disparagement of Plaintiff's products and services, false advertising,

8   unlawful telemarketing and investment advising, and failure to disclose the

9   relationship with Regal on their Regal Affiliate Websites,  constitute unlawful, unfair

10  and fraudulent business acts or practices as defined by California Business &

11  Professions Code §§ *17200, et seq.*

12     137.  Plaintiff has valid and protectable rights in the GOLDLINE Marks.

13     138.  As set forth in this Complaint, Defendants' false and misleading

14  disparagement of Plaintiff and its services, and misleading and deceptive endorsement

15  and recommendation of Regal's services throughout the content of the Regal Affiliate

16  Websites and their unlicensed, unconsented to, and otherwise unauthorized use of the

17  GOLDLINE Marks and/or confusingly similar variations thereof throughout the

18  content of the Regal Affiliate Websites constitutes trademark infringement, unfair

19  competition, and false advertising under Sections 32(a) and 43(a) of the Lanham Act,

20  15 U.S.C. §§ 1114(a), 1125(a), and false advertising under California Business &

21  Professions Code § 17500, and, therefore, is an "unlawful" business act or practice in

22  violation of California Business & Professions Code §§ 17200, *et seq.*

23     139.  Also, by publishing false and misleading representations of fact

24  concerning Plaintiff and other competitors of Regal, as well as false statements

25  concerning consumer ratings and customer complaints for Plaintiff and Regal,

26  Defendants are engaging in false advertising and unfair competition under Section

27  43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and false advertising under California

28

Business & Professions Code § 17500, and, therefore, an "unlawful" business act or practice in violation of California Business & Professions Code §§ 17200, *et seq.*

140.   The above-described acts and practices by Defendants and their continuing willful and concerted effort to disparage Plaintiff, to misrepresent the quality and reputation of Defendants' products and services, and to trade on Plaintiff's goodwill constitute "unfair" business acts or practices in violation of California Business & Professions Code §§ 17200, *et seq.*

141.   Additionally, Defendants' inadequate disclosure and, in some instances, complete failure to disclose the relationship with Regal, constitutes "unfair" business acts or practices in violation of California Business & Professions Code §§ 17200, *et seq.*

142.   The above-described acts and practices by Defendants, on information and belief, have caused and are likely to continue to cause the general public, trade, consumers, and the relevant purchasing public to be confused, misled and deceived as to the quality of Plaintiff's and Defendants' products and services, and, further, to confuse, mislead, and deceive such persons into wrongly believing that the Regal Affiliate Websites are sponsored by, endorsed by, approved by, supervised by, or otherwise connected with Plaintiff.

143.   Thus, the above-described acts and practices by Defendants are also likely to mislead or deceive the general public and, therefore, constitute "fraudulent" business acts or practices and/or unfair, deceptive, untrue or misleading advertising in violation of California Business & Professions Code §§ 17200, *et seq.*

144.   As a result of the Defendants' unfair, unlawful, and fraudulent business acts and practices, Plaintiff has lost profits to Defendants and is entitled to recover from Defendants those lost profits in which Plaintiff has an identifiable vested interest.

145.   Plaintiff is entitled to damages under common law.

**SECOND AMENDED COMPLAINT**

146.   As a result of the Defendants' unfair, unlawful, and fraudulent business acts and practices, Plaintiff will suffer irreparable injury in an amount that cannot be ascertained at this time if Defendants are not enjoined.

147.   By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendants, and anyone acting in concert with Defendants, prohibiting Defendants from continuing such unfair, unlawful, and fraudulent business acts and practices and, after trial, to recover  from Defendants in restitution the ill-gotten profits of Defendants in which Plaintiff has an identifiable vested interest and any and all damages recoverable under common law.

## SIXTH CLAIM FOR RELIEF

### (Common Law Trademark Infringement)

148.   Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 147 of this Complaint.

149.   Plaintiff has continuously used the GOLDLINE Marks in commerce in connection with Plaintiffs products and services since at least as early as 1974, and, accordingly, has established common law trademark rights in the GOLDLINE Marks.

150.   The GOLDLINE Marks are inherently distinctive and/or have acquired strong secondary meaning among the trade, with consumers, and the relevant purchasing public in the trade, in the State of California and indeed throughout the entire United States. Through Plaintiff's use, consumers and the relevant purchasing public have come to use the GOLDLINE Marks to associate, identify, and distinguish Plaintiff as the source of origin of Plaintiff's investment products and services.

151.   Defendants' unlicensed, unconsented to, and otherwise unauthorized use of the GOLDLINE Marks and/or confusingly similar variations thereof in Defendants' advertisements, promotional materials, and/or website content on or in connection with marketing, advertising, promoting, offering for sale, and selling Regal's similar products and/or services constitutes infringement of Plaintiff's common law trademark

1  rights in the GOLDLINE Marks and misappropriates the valuable goodwill developed
2  by Plaintiff in the GOLDLINE Marks.

3      152.   On information and belief, such conduct has caused and is likely to
4  continue to cause the general public, trade, consumers, and the relevant purchasing
5  public to be confused, misled and deceived as to the source of origin of Regal's
6  products and services, and, further, to confuse, mislead, and deceive such persons into
7  wrongly believing that Defendants' businesses are affiliated with, connected with,
8  associated with, sponsored by, endorsed by, administered by, supervised by, or
9  otherwise connected with Plaintiff.

10     153.   Upon information and belief, Defendants were, or should have been,
11  aware of Plaintiff's use of and corresponding rights in the GOLDLINE Marks and the
12  actions of Defendants were undertaken with an intentional, willful, or malicious intent
13  to trade upon the goodwill associated with and the distinctiveness, strength, and value
14  of Plaintiff's GOLDLINE Marks and to evoke the same image in the minds of
15  consumers of investment products and services.

16     154.   Upon information and belief, Defendants' acts in violation of California
17  common law have caused and will continue to cause damage and irreparable harm to
18  Plaintiff, and are likely to continue unabated, thereby causing further damage and
19  irreparable harm to Plaintiff and to the goodwill and business reputation symbolized by
20  and associated with their valuable GOLDLINE Marks, unless preliminarily and
21  permanently enjoined and restrained by the Court. Plaintiff has no adequate remedy at
22  law for Defendants' continuing violation of Plaintiff's rights and Plaintiff will suffer
23  irreparable injury in an amount that cannot be ascertained at this time if Defendants are
24  allowed to continue to wrongfully use Plaintiff's valuable GOLDLINE Marks, and/or
25  any confusingly similar variations thereof.

26     155.   By reason of the foregoing, Plaintiff is entitled to preliminary and
27  permanent injunctive relief against Defendants, and anyone acting in concert with
28  Defendants, to restrain further acts of infringement of Plaintiff's rights and, after trial,

1    to recover any damages proven to have been caused by reason of Defendants'

2    aforesaid acts of infringement, Defendants' profits, costs of corrective advertising, any

3    enhanced damages justified by the willful and intentional nature of such acts, and other

4    damages according to proof at trial, including costs and attorneys' fees.

5                            **SEVENTH CLAIM FOR RELIEF**

6    **(Statutory Dilution Under California Business & Professions Code §14247)**

7         156.   Plaintiff re-alleges and incorporates by reference the allegations contained

8    in Paragraphs 1 through 155 of this Complaint.

9         157.   For forty years, Plaintiff has been promoting its high quality products and

10   services through extensive display and use of its GOLDLINE Marks in print

11   advertising, on radio and television, through the operation of its websites, on YouTube

12   video commercials, and through word of mouth. For example, Plaintiff spent more

13   than $62M in advertising, including television, radio and the internet, during the past

14   36 months alone.

15        158.   By nature of the inherent and/or long acquired distinctiveness of the

16   GOLDLINE Marks, the long duration and extensive use of the GOLDLINE Marks, on

17   and in connection with the advertising, marketing, promotion, offers for sale, and sale

18   of high quality investment products and services, and the strong recognition and

19   reputation of the GOLDLINE Marks among the general public, trade, consumers and

20   the relevant purchasing public as being the source of origin of Plaintiff's products and

21   services, the GOLDLINE Marks have become famous.

22        159.   After Plaintiff's GOLDLINE Marks became famous, Defendants made

23   and are currently making interstate commercial use, including use in the State of

24   California, of Plaintiff's distinctive, valuable, well-known and famous GOLDLINE

25   Marks and/or confusingly similar variations thereof.

26        160.   Defendants' acts with respect to the GOLDLINE Marks, including the

27   unauthorized use of the GOLDLINE Marks to deceptively label hyperlinks to Regal

28   and Regal Affiliate Websites and the unauthorized use of the GOLDLINE Marks,

including the registered logos, in connection with their products and services offered by Regal Affiliate Websites, have and are continuing to dilute and diminish the distinctive nature of the GOLDLINE Marks by lessening the ability and capacity of the mark to identify and distinguish Plaintiff as the sole source of origin of its high quality investment products and services, by tarnishing the good reputation associated with the GOLDLINE Marks, and by seeking to derive a commercial benefit from the value and goodwill associated with the GOLDLINE Marks.

161.   For example, when a consumer clicks on a hyperlink labeled with one of the GOLDLINE Marks, including Plaintiff's registered trademark, or otherwise labeled with the website address www.goldline.com, throughout some of the Regal Affiliate Websites, the consumer is taken to web pages promoting and selling the products and services of Regal, not Plaintiff. These instances of improper and unlawful use of the GOLDLINE Marks dilutes and diminishes the distinctive nature of the famous GOLDLINE Marks.

162.   Defendants' wrongful use and infringement upon the GOLDLINE Marks has and is continuing to dilute the distinctive nature of the Marks by lessening the extensive and valuable goodwill, quality, and honor that is associated with the Marks.

163.   By their acts hereinabove described, Defendants have violated and continue to violate, *inter alia,* Cal. Bus. & Prof. Code § 14247.

164.   Defendants' acts in violation of Cal. Bus. & Prof. Code §14247 have caused and will continue to cause damage and irreparable harm to Plaintiff and are likely to continue unabated, thereby causing further damage and irreparable harm to Plaintiff and to the goodwill symbolized by and associated with its distinctive, valuable, well-known and famous GOLDLINE Marks unless preliminarily and permanently enjoined and restrained by the Court.

165.   Plaintiff has no adequate remedy at law and will suffer irreparable injury if Defendants are allowed to continue to wrongfully use Plaintiff's valuable and well-known GOLDLINE Marks, and/or any confusingly similar variations thereof.

## EIGHTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

166.   Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 165 of this Complaint as if fully set forth herein.

167.   Defendants' fraudulent disparagement of Plaintiff and its products and services, and false and misleading advertisement of Regal's products and services, misrepresent the quality of Plaintiff's and Regal's respective products and services.

168.   Defendants' acts with respect to the GOLDLINE Marks, including the unauthorized use of the GOLDLINE Marks to deceptively label hyperlinks to Regal and Regal Affiliate Websites and the unauthorized use of the GOLDLINE Marks, including the registered logos, in connection with their products and services offered by Regal Affiliate Websites wrongly suggests to the trade, relevant purchasing public and consumers that the Defendants' products and services and the Regal Affiliate Websites are endorsed, approved, or sponsored by, or are in some other way associated or connected with Plaintiff.

169.   Upon information and belief, the above-described conduct of Defendants has caused and is likely to continue to cause the trade, consumers and the relevant purchasing public to be confused, deceived and mistaken as to the quality of Plaintiff's products and services, and the quality and source of origin of the products and/or services being offered and sold by Defendants, and, further, to confuse, mislead, and deceive such persons into wrongly believing that Defendants' products and services are affiliated with, connected with, associated with, sponsored by, endorsed by, administered by, supervised by, or otherwise connected with Plaintiff.

170.   Upon information and belief, Defendants have intentionally traded and infringed upon Plaintiff's GOLDLINE Marks and misrepresented the quality and source of origin of its products and/or services.

**SECOND AMENDED COMPLAINT**

171. By virtue of Defendants' acts described above, Defendants have committed and are continuing to commit acts of unfair competition and false designation of origin under California common law.

172. Upon information and belief, Defendants' aforesaid acts of unfair competition and false designation of origin have caused and will continue to cause damage and irreparable harm to Plaintiff, and are likely to continue unabated, thereby causing further damage and irreparable harm to Plaintiff and to the goodwill and business reputation symbolized by and associated with the valuable GOLDLINE Marks, unless preliminarily and permanently enjoined and restrained by the Court. Plaintiff has no adequate remedy at law for Defendants' continuing violation of Plaintiff's rights and Plaintiff will suffer irreparable injury in an amount that cannot be ascertained at this time if Defendants are allowed to continue to wrongfully use Plaintiff's valuable GOLDLINE Marks, and/or any confusingly similar variations thereof.

173. By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendants, and anyone acting in concert with Defendants, to restrain further acts of unfair competition and false designation of origin and, after trial, to recover any damages proven to have been caused by reason of Defendants' aforesaid acts of unfair competition and false designation of origin, Defendants' profits, costs of corrective advertising, any enhanced damages justified by the willful and intentional nature of such acts, and other damages according to proof at trial, including costs and attorneys' fees.

## NINTH CLAIM FOR RELIEF

### (Racketeering -18 U.S.C. § 1962(c) (RICO))

174. Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 173 of this Complaint as if fully set forth herein.

175. Pursuant to the unlawful conduct of Defendants as detailed in Paragraphs 31 through 89 of this Complaint, for at least during 2011 through 2014, Defendants

1  have fraudulently derived and shared the proceeds from sales of precious metals
2  diverted from Plaintiff by Defendants' Regal Affiliate Websites, which infringe the
3  GOLDLINE Marks, disseminate false statements about and fraudulently disparage
4  Plaintiff and its products and services, falsely state or imply that they are authored and
5  operated by impartial and unbiased reviewers, and deceptively endorse and
6  recommend Regal's products and services.

7        176.   The Defendants perpetuate the operation of their respective Regal
8  Affiliate Websites, including continuing the infringement of the GOLDLINE Marks,
9  fraudulent disparagement of Plaintiff and its products and services, and deceptive
10 endorsement of Regal's products and services, by using the portion of the proceeds
11 from sales of precious metals paid by Regal for each sale diverted from Plaintiff and
12 originating from their respective websites.

13        177.   Defendants constitute and are engaged in an enterprise (the "Regal
14 enterprise") within the meaning of the federal *RICO* statute, 18 U.S.C. §§ *1961, et seq.,*
15 including 18 U.S.C. § 1962(c).

16        178.   Defendants are each a "person" as that term is defined in 18 U.S.C. §
17 1961(3) who is associated with the Regal enterprise, and they are associated-in-fact.

18        179.   Defendants engaged in racketeering activity, within the meaning of 18
19 U.S.C. § 1961(1), by engaging in the acts set forth above, and invested, directly or
20 indirectly, the income and/or proceeds of such income derived therefrom, in the further
21 establishment and/or operation of the Regal enterprise.

22        180.   The acts set forth above constitute a violation or violations of 18 U.S.C. §
23 1341 (mail fraud) and/or a violation or violations of 18 U.S.C. § 1343 (wire fraud).
24 Defendants committed and/or aided and abetted the commission of two or more of
25 these acts of racketeering activity, including but not limited to those acts of
26 racketeering activity set forth in allegations in Paragraphs 31 through 89 of this
27 Complaint.

28

**SECOND AMENDED COMPLAINT**

181.   The Regal enterprise engages in and has had an effect on interstate commerce. The Regal enterprise, for example, resulted in interstate sales of precious metals being diverted from Plaintiff to Regal, and portions of the proceeds of such diverted sales of precious metals transferred to the various Defendants located across the United States; it also resulted in monies being sent in interstate commerce in connection with the operation of the Defendants' websites.

182.   Defendants each knowingly and willfully conducted and/or participated, directly or indirectly, in the conduct of the Regal enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

183.   While the members of the Regal enterprise participated in and are part of the enterprise, they also have an existence separate and distinct from the enterprise:

> (a)   Regal is a California limited liability company;
>
> (b)   Defendants Felix, Gallagher, Gamble, Curto, Nichol, and Crestani, are individuals;
>
> (c)   Does 1 through 100 are individuals or independent legal entities which also have an existence separate and distinct from the enterprise.

184.   During at least 2011 through 2014, Defendants knowingly and willfully committed, or knowingly and willfully aided in the commission of, two or more predicate offenses that constitute the pattern of racketeering activity, and each knowingly and willfully received income derived, directly or indirectly, from such pattern of racketeering activity. Such predicate acts include, but are not limited to, violations of the mail fraud and wire fraud statutes within the meaning of 18 U.S.C. §§1961(1) and 1962(c), through the use of the mail, Internet, telephone and wire transfers of funds as described in this Complaint.

185.   The predicate acts all occurred after the effective date of the RICO statute, and more than two such acts occurred within two years of one another. On information and belief, Defendants engaged in numerous predicate acts during at least 2011

1    through 2014 in conducting and/or participating in the conduct of the Regal
2    enterprise's racketeering activity.

3        186.   The pattern of racketeering activities and the related predicate acts were
4    and are continuous over a substantial period of time, and became a regular way in
5    which Defendants conducted the business of the Regal enterprise.

6        187.   The common purpose of the Regal enterprise with respect to its pattern of
7    racketeering activity was for Defendants to disseminate fraudulent and misleading
8    false representations over the Internet and, upon information and belief, the telephone,
9    to defraud consumers and divert sales from Plaintiff, in which consumers were induced
10   to wire and mail funds to Defendants based on the false representations of Defendants.

11       188.   The result of that racketeering activity was that sales were fraudulently
12   diverted from Plaintiff, thereby damaging Plaintiff, competition was harmed, and
13   consumers were defrauded, thereby depriving the public of the opportunity to avail
14   themselves of Plaintiff.

15       189.   As a direct and proximate result of, and by reason of, the activities of
16   Defendants and their conduct in violation of 18 U.S.C. § 1962(c), Plaintiff has been
17   injured in its business or property, within the meaning of 18 U.S.C. § 1964(c).

18       190.   Defendants' violations of 18 U.S.C. §1962(c) in connection with the
19   Regal enterprise proximately caused injury to Plaintiff's business or property, namely
20   lost sales, and damage to its goodwill, reputation and value of its business.

21       191.   As a direct and proximate result of, and by reason of, the activities of
22   Defendants and their conduct in violation of 18 U.S.C. § 1962(c), Plaintiff has been
23   injured in its business or property, within the meaning of 18 U.S.C. § 1964(c).

24       192.   Plaintiff suffered damages as a result of the Regal enterprise, including
25   monies lost during the Regal enterprise and the costs of investigation of the acts of
26   Defendants.

27
28

SECOND AMENDED COMPLAINT

193.   The pattern of racketeering activity is currently ongoing and open-ended, and threatens to continue indefinitely unless this Court enjoins the racketeering activity.

194.   Numerous schemes have been completed involving repeated unlawful conduct that by its nature, projects into the future with a threat of repetition.

195.   Plaintiff is entitled to recover threefold-the damages it sustained, together with the cost of this suit, including costs, attorneys' fees, and experts' fees.

## TENTH CLAIM FOR RELIEF
### (Racketeering - 18 U.S.C. § 1962(a) (RICO))

196.   Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 195 of this Complaint as if fully set forth herein.

197.   Pursuant to the conduct as detailed in Paragraphs 31 through 89 of this Complaint, for at least during 2011 through 2014, Defendants have fraudulently derived and shared the proceeds from sales of precious metals diverted from Plaintiff by Defendants' websites which infringe the GOLDLINE Marks, fraudulently disparage Goldine and its products and services, and deceptively endorse and recommend Regal's products and services by use of the Internet.

198.   Defendants perpetuate the operation of their respective websites, including continuing the infringement of the GOLDLINE Marks, disseminating false statements about and fraudulently disparaging Plaintiff and its products and services, falsely stating or implying that they are authored and operated by impartial and unbiased reviewers, and deceptively endorsing Regal's products and services, by use of the Internet, and by using the portion of the proceeds from sales of precious metals paid by Regal for each sale diverted from Plaintiff and originating from Defendants' respective websites.

199.   Defendants constitute and are engaged in an enterprise within the meaning of the federal RICO statute, 18 U.S.C. §§ 1961, *et seq.,* including specifically 18

1 | U.S.C.§ 1962(a). Defendants are each a "person" as that term is defined in 18 U.S.C. §
2 | 1961(3) who is associated with the Regal enterprise, and they are associated-in-fact.
3 |      200.   The Regal enterprise engages in and has had an effect on interstate
4 | commerce. The Regal enterprise, for example, resulted in interstate sales of precious
5 | metals being diverted from Plaintiff to Regal, and portions of the proceeds of such
6 | diverted sales of precious metals transferred to the various Defendants located across
7 | the United States; it also resulted in monies being sent in interstate commerce in
8 | connection with the operation of Defendants' websites.
9 |      201.   Defendants each knowingly and willfully conducted and/or participated,
10 | directly or indirectly, in the conduct of the Regal enterprise's affairs through a pattern
11 | of racketeering activity, in violation of 18 U.S.C. § 1962(a).
12 |      202.   While the members of the Regal enterprise participated in and are part of
13 | the enterprise, they also have an existence separate and distinct from the enterprise:
14 |                (a)    Regal is a California limited liability company;
15 |                (b)    Defendants Felix, Gallagher, Gamble, Curto, Nichol, and
16 | Crestani, are individuals
17 |                (c)    DOES 1 through 100 are individuals or independent legal
18 | entities which also have an existence separate and distinct from the
19 | enterprise.
20 |      203.   During at least 2011 through 2014, Defendants knowingly and willfully
21 | committed, or knowingly and willfully aided in the commission of, two or more
22 | predicate offenses that constitute the pattern of racketeering activity, and each
23 | knowingly and willfully received income derived, directly or indirectly, from such
24 | pattern of racketeering activity, and each has used and invested the income and
25 | proceeds from the racketeering activity in enterprises engaged in interstate commerce,
26 | including in the operation of Defendants' websites and Regal's business activities over
27 | the internet. Such predicate acts include, but are not limited to, violations of the mail
28 | fraud and wire fraud statutes within the meaning of 18 U.S.C. §§1961(1) and 1962(c),

1  through the use of the mail, internet, telephone and wire transfers of funds as described
2  in this pleading.

3      204.   The predicate acts all occurred after the effective date of the RICO statute,
4  and more than two such acts occurred within two years of one another. On information
5  and belief, Defendants engaged in numerous predicate acts during at least 2011
6  through 2014 in conducting and/or participating in the conduct of the Regal
7  enterprise's racketeering activity.

8      205.   The pattern of racketeering activities and the related predicate acts were
9  and are continuous over a substantial period of time, and became a regular way in
10  which Defendants conducted the business of the Regal enterprise.

11      206.   Specifically, Defendants engaged in racketeering activity, within the
12  meaning of 18 U.S.C.§ 1961(1), by engaging in the acts set forth above in Paragraphs
13  31 through 89 of the Complaint, and invested, directly or indirectly, the income and/or
14  proceeds of such income derived therefrom, in the further establishment and/or
15  operation of the Regal enterprise. The acts set forth above constitute a violation or
16  violations of 18 U.S.C. § 134.1 (mail fraud) and/or a violation or violations of 18
17  U.S.C. § 1343 (wire fraud).

18      207.   Defendants committed and/or aided and abetted the commission of two or
19  more of these acts of racketeering activity, including but not limited to those acts of
20  racketeering activity set forth in allegations in Paragraphs 31 through 89 of this
21  Complaint.

22      208.   As a direct and proximate result of, and by reason of, the activities of
23  Defendants and their conduct in violation of 18 U.S.C. § 1962(a), Plaintiff has been
24  injured in its business or property, within the meaning of 18 U.S.C. § 1964(c).

25      209.   Plaintiff suffered damages as a result of the Regal enterprise, including
26  lost sales and profits, and damage to its goodwill, reputation and value of its business
27  lost during the Regal enterprise, and the costs of investigation of Defendants' acts.

28

**SECOND AMENDED COMPLAINT**

210.   The pattern of racketeering activity is currently ongoing and open- ended, and threatens to continue indefinitely unless this Court enjoins the racketeering activity.

211.   Numerous schemes have been completed involving repeated unlawful conduct that by its nature, projects into the future with a threat of repetition.

212.   Plaintiff is entitled to recover threefold the damages it sustained, together with the cost of this suit, including costs, attorneys' fees, and experts' fees.

## ELEVENTH CLAIM FOR RELIEF

### (Common Law Trade Libel/Commercial Disparagement)

213.   Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 212 of this Complaint as if fully set forth herein.

214.   Defendants published or caused to be published false statements that are harmful to Plaintiff's interests, with the intent that the publication of the statement would be harmful to its business and cause diversion of its sales and harm to its interests.

215.   Defendants' false statements are defamatory *per se* on the basis that they falsely impute to Plaintiff matter incompatible with its business, trade, and profession.

216.   By offering false and misleading and representations of fact concerning Plaintiff and other competitors of Regal, as well as false statements concerning, *inter alia,* consumer ratings and customer complaints for Regal, Defendants disparaged the quality, integrity and security of precious metal investment products and services provided by Plaintiff, thereby misleading consumers to purchase precious metals from Regal, to the financial gain of Defendants and to the detriment of Plaintiff.

217.   At the time of such publication, Defendants knew that the statements were false or acted in reckless disregard of the truth or falsity of such statements.

218.   As a proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer damage and loss, in an amount to be determined at the time of trial.

**SECOND AMENDED COMPLAINT**

219.   In addition to damages for lost sales, Plaintiff is entitled to punitive damages pursuant to California Civil Code § 3294 because Defendants acted with actual malice, in an amount to be decided by the jury at trial

**TWELFTH CLAIM FOR RELIEF**

**(Civil Conspiracy)**

220.   Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 219 of this Complaint as if fully set forth herein.

221.   By colluding to publish false and misleading representations of fact concerning Regal, Plaintiff and/or other competitors of Regal, as well as false statements concerning, *inter alia,* consumer ratings and customer complaints for Regal, Defendants have conspired to unfairly compete with Plaintiff.

222.   Defendants have also colluded to intentionally trade and infringe upon Plaintiff's GOLDLINE Marks, and to commit false advertising, unfair completion, trademark infringement and dilution.

223.   Plaintiff's remedy at law is not by itself sufficient to compensate Plaintiff for all the irreparable injuries inflicted and threatened by the conspiracies between and among the Defendants, including but not limited to loss of goodwill, reputation, sales and business opportunities.

224.   The Court should find Defendants have conspired to intentionally trade and infringe upon Plaintiff's GOLDLINE Marks and to commit false advertising, unfair completion, trademark infringement and dilution; that punitive damages are appropriate; and should award Plaintiff damages as well as injunctive relief (including but not limited to a temporary restraining order, preliminary injunction and permanent injunction) and other relief consistent with the prayer for relief below.

225.   In addition to equitable relief, Plaintiff demands monetary damages, fees and costs, where allowed.

226.   In conspiring to intentionally trade and infringe upon Plaintiff's GOLDLINE Marks; and to commit false advertising, unfair competition, trademark

1   infringement and dilution, Defendants are guilty of oppression, fraud and malice. Such

2   conduct constituted despicable conduct carried on by Defendants with a willful and

3   conscious disregard for the rights of Plaintiff and, as a result, Plaintiff is entitled to an

4   award, in addition to compensatory damages, of punitive damages sufficiently large,

5   taking into account Defendants' substantial wealth, to punish Defendants and to

6   discourage such conduct in the future.

7

8   Respectfully submitted.

9   Dated:  May 5, 2015

10                                         **BALLARD ROSENBERG GOLPER & SAVITT, LLP**

11                          By: _____ /s/ Eric C. Schwettmann_____
                                   Linda Miller Savitt
12                                 Eric C. Schwettmann
                                   500 North Brand Boulevard, Twentieth Floor
13                                 Glendale, California 91203
                                   Telephone:  (818) 508-3700
14                                 Facsimile: (818) 506-4827
                                   Email:    lsavitt@brgslaw.com
15                                           eschwettmann@brgslaw.com

16                              Attorneys for Plaintiff Goldline, LLC

17  Of Counsel:
    Timothy M. McKissock
18  Attorneys for Goldline, LLC

19  NELSON MULLINS RILEY &
    SCARBOROUGH LLP
20  1320 Main Street / 17th Floor
    Post Office Box 11070 (29211-1070)
21  Columbia, SC  29201
    Telephone:  (803) 255-5528
22  Facsimile:  (803) 256-7500
    Email: tim.mckissock@nelsonmullins.com
23  Admitted Pro Hac Vice

24

25

26

27

28

**SECOND AMENDED COMPLAINT**